IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERKS OFFICE US DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED

August 12, 2026

LAURA A. AUSTIN, CLERK
BY: **/s/ Nik Sams**
DEPUTY CLERK

|  |  |  |
|---|---|---|
| Nzar Sharif, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:26-cv-00005 |
| | ) | |
| Experian Information Solutions, Inc. *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On April 27, 2026, upon Plaintiff Nzar Sharif's motion, (Dkt. 20), the clerk entered default against Defendant EnFin Corp. ("EnFin") pursuant to Federal Rule of Civil Procedure 55(a), (Dkt. 23). This matter is before the court on EnFin's motion for an order setting aside the clerk's entry of default and accepting EnFin's responsive pleading. (Dkt. 26.) For the following reasons, the court will grant EnFin's motion.

### I.    Background

On January 15, 2026, Sharif filed a complaint against Defendants EnFin, Experian Information Solutions, Inc., and Trans Union, LLC. (Dkt. 1.) The complaint alleges that Defendants violated various provisions of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x, by reporting inaccurate information regarding Sharif's account and by failing to reasonably investigate Sharif's subsequent disputes. (*Id.* ¶¶ 1–13.) Specifically as to EnFin, Sharif alleges that the consumer reporting agencies' ("CRAs") transmission of Sharif's disputes through the e-OSCAR system triggered EnFin's duty to investigate Sharif's complaints. (*Id.*

¶¶ 77–79, 83–86.)  Thereafter, Sharif alleges that EnFin's only response to Sharif's disputes was to "consult its own internal account records and simply report back to the CRAs the same inaccurate information."  (*Id.* ¶¶ 80–82.)  Sharif claims that EnFin violated several provisions of FCRA: (1) § 1681s-2(b)(1)(A) and (B) by failing to conduct a reasonable investigation of Sharif's disputes and failing to review all relevant information transmitted by the CRAs; (2) § 1681s-2(b)(1)(C) and (D) by responding to the CRAs without noting that the account was disputed; and (3) § 1681s-2(b)(1)(E) by failing to correct the fraudulent information in Sharif's file.  (*Id.* ¶¶ 140–61.)  Sharif alleges that these violations were willful.  (*Id.* ¶¶ 144, 151, 155, 160.)

Sharif served EnFin on January 21, 2026.  (Dkt. 6.)  Accordingly, EnFin's answer or responsive pleading was due on February 11, 2026.  (*Id.*)  After EnFin failed to timely respond to the complaint, on April 16, 2026, Sharif moved for entry of default.  (Dkt. 20.)  The clerk's entry of default was docketed on April 27, 2026.  (Dkt. 23.)  EnFin explains that as soon as it learned of this entry of default, it located defense counsel.  (Dkt. 27 at 1.)  On May 22, 2026, about a month after the entry of default, EnFin filed the instant motion to set aside entry of default.  (Dkt. 26.)  EnFin contemporaneously filed its answer to Sharif's complaint and its affirmative defenses, (Dkt. 28), and asked that this court accept the responsive pleading, (Dkt. 27 at 5).  Sharif responded in opposition to EnFin's motion, (Dkt. 36), and EnFin replied, (Dkt. 37).

## II.    Standard of Review

Federal Rule of Civil Procedure 55 governs entries of default.  If a party has "failed to plead or otherwise defend" against an action, the clerk must enter default against that party.  Fed. R. Civ. P. 55(a).  However, the court may set aside a clerk's entry of default "for good cause."  *Id.* 55(c).  Rule 55(c)'s "good cause" standard for entries of default is more forgiving of defaulting parties than Rule 60(b)'s "excusable neglect" standard for final default judgments because "it does not implicate any interest in finality."  *Mullinex v. John Crane Inc.*, 636 F. Supp. 3d 622, 625 (E.D. Va. 2022) (quoting *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 420 (4th Cir. 2010)).  The decision of whether to grant a Rule 55(c) motion is "largely within the discretion of the trial judge."  *Payne ex rel. Est. of Calzada v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006) (quoting *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967)).  "Rule 55(c) motions must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'"  *Colleton Preparatory Acad.*, 616 F.3d at 421 (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)).

## III.    Analysis

The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits."  *Colleton Preparatory Acad.*, 616 F.3d at 417.  Thus, "[a]ny doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits."  *Tolson*, 411 F.2d at 130.  In the Fourth Circuit, courts consider six factors when analyzing a Rule 55(c) motion: (1) whether the moving party has a meritorious defense;

(2) whether the moving party acts with reasonable promptness; (3) the personal responsibility of the defaulting party; (4) the prejudice to the non-moving party; (5) whether there is a history of dilatory action, and (6) the availability and effectiveness of less drastic sanctions. *Payne*, 439 F.3d at 204–05. The court addresses each of these six *Payne* factors in turn.

For the first factor of whether there is a "meritorious defense," EnFin has the minimal burden of "present[ing] or proffer[ing] [] evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). "[E]ven a tenuous defense may suffice so long as a court can discern the possibility that a defendant may vindicate his claim." *DirecTV, Inc. v. Aiken*, No. 3:03-cv-00049, 2004 WL 547221, at *2 (W.D. Va. Mar. 16, 2004) (cleaned up). In other words, the court need only determine "whether there is *some possibility* that the outcome after a full trial will be contrary to the result achieved by the default." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988) (cleaned up) (emphasis added).

Here, EnFin's main defenses are that (1) the complaint's allegations about EnFin's inadequate inspection and response to Sharif's disputes are factually incorrect, and (2) in the alternative, any FCRA violations were not committed willfully. (Dkt. 27 at 3.) In support of these factual denials, EnFin cites the declaration of its Chief Risk Officer Tim McFarland. (*See id.*; Dkts. 27-1, 31.) McFarland states that after receiving notices of Sharif's dispute, EnFin "promptly updated its records to reflect the dispute and conducted reasonable inspection of its records to investigate each alleged dispute," as well as "confirmed the account information, status, history, and ownership then provided a response with the results of its investigation"

- 4 -

on specified dates. (Dkt. 27-1 ¶¶ 5–7.) EnFin also attaches a copy of a loan agreement, purportedly between Sharif and EnFin, which sets forth the terms for installing solar panels on Sharif's home. (*See* Dkt. 27-2.) EnFin references this agreement, as well as public records showing that the property discussed in the agreement is Sharif's home, (Dkt. 27-3), to argue that the agreement was not actually executed by an identity thief and the transaction was not actually fraudulent. (*See* Dkt. 27 at 3–4.)

Sharif responds that McFarland's declaration relies on conclusory characterizations of EnFin's "reasonable inspection." (Dkt. 36 at 6.) Generally, "[c]onclusory statements that aver a meritorious defense are insufficient," and there must be underlying facts to support the defense. *Burton v. The TJX Companies, Inc.*, No. 3:07-cv-00760, 2008 WL 1944033, at *3 (E.D. Va. May 1, 2008). Although EnFin proffers minimal facts to support its defenses, McFarland's declaration and EnFin's exhibits amount to more than mere conclusory statements that EnFin did not commit the asserted violations. *Cf. Mayrant v. Norfolk Redevelopment & Hous. Auth.*, 801 F. Supp. 3d 601, 616 (E.D. Va. 2025) ("Therein, Defendant does not put forth a single allegation that allows the Court to infer that it has a meritorious defense to [plaintiff's] failure-to-accommodate claim."). Additionally, the mere lack of detail as to EnFin's investigation of Sharif's does not necessarily mean that EnFin only conducted a "cursory review." (*See* Dkt. 36 at 6.) Because the court resolves any doubts in favor of setting aside the default, *see Augusta Fiberglass Coatings, Inc.*, 843 F.2d at 812, and because other factors weigh in favor of granting the motion, the court "will assume, for the sake of argument, that this factor weighs in favor

of" EnFin, *Cofield v. Worktime, Inc.*, No. CV 22-00727, 2022 WL 2315723, at *2 (D. Md. June 28, 2022).

The second *Parke* factor is the "reasonable promptness" of EnFin's response to the entry of default. While this factor depends on the circumstances of each individual case, *see Moradi*, 673 F.2d at 727, "[d]istrict courts in the Fourth Circuit have found that a defendant acted reasonably promptly when waiting seventeen, twenty-one, and thirty-two days after default was entered before attempting to set it aside," *Burton*, 2008 WL 1944033, at *3 (collecting cases). EnFin moved to set aside default on May 22, 2026—twenty-five days after the clerk entered default. (*See* Dkts. 23, 26.) Sharif also concedes that courts have treated this length of delay as reasonably prompt. (Dkt. 36 at 10.) Accordingly, this factor weighs in favor of setting aside default.

Under the third factor, the court considers the extent to which EnFin was personally responsible for the entry of default. EnFin admits that "[s]ervice was lost due to inadvertence caused by personnel turnover, which in turn caused EnFin to fail to respond to Plaintiff's Complaint in time." (Dkt. 27 at 4.) Thus, EnFin is personally responsible, and this factor weighs against setting aside entry of default.

Fourth, a showing of prejudice to the opposing party can weigh against vacating entry of default. Here, the court finds that the delay in EnFin's appearance causes little to no prejudice for Sharif, the non-moving party. "To determine if the non-defaulting party was prejudiced, courts examine whether the delay caused by the default: (1) made it impossible for the non-defaulting party to present some of its evidence; (2) made it more difficult for the

nondefaulting party to proceed with trial; (3) hampered the non-defaulting party's ability to complete discovery; and (4) was used by the defaulting party to collude or commit a fraud." *Mullinex*, 636 F. Supp. 3d at 627. None of these forms of prejudice apply in the instant case. EnFin filed its answer and motion to set aside default only a month after the court entered its Scheduling Order, (Dkt. 21), such that the only discovery deadlines that passed before EnFin appeared were the Rule 26(f) conference and the Rule 26(a)(1) initial disclosure deadlines.[1] This delay does not go so far as to "impair[] [Sharif's] ability to complete discovery." *Mullinex*, 636 F. Supp. 3d at 627.

The fifth factor, a history of dilatory action by the defendant, weighs in favor of setting aside default. Sharif does not provide any evidence of previous dilatory action; rather, he concedes that this factor favors EnFin. (*See* Dkt. 36 at 11.)

Finally, the sixth *Payne* factor addresses the availability and effectiveness of less drastic sanctions than the entry of default judgment. In his response brief, Sharif requests an award of "reasonable attorney's fees and costs incurred in obtaining the entry of default and in litigating the present motion." (*Id.*) He also requests that the court "require EnFin to serve its Rule 26(a)(1) initial disclosures within seven days and provide that EnFin takes the case as it finds it—bound by the existing Scheduling Order and Joint Discovery Plan, with no enlargement of the deadlines occasioned by its default." (*Id.* at 11–12.) "[R]equiring a defaulting party to pay the non-defaulting party's fees and costs associated with seeking entry

---

[1] As Sharif recognizes in his response brief, the court's Scheduling Order deadlines are firm. But extension requests caused by EnFin's delay in appearing would not be attributable to Sharif's lack of diligence, and Sharif is free to request extensions in discovery deadlines, if needed, based on this court's ruling.

of default and default judgment is an appropriate and less drastic sanction than entry of default judgment." *Red Light Mgmt., Inc. v. Dalton*, 315 F.R.D. 65, 73 (W.D. Va. 2016) (collecting cases). Here, the court finds that an award of attorney's fees and costs is a sufficient sanction. EnFin shall pay Sharif's attorney's fees and costs in preparing filings related to the default proceedings, including the response to EnFin's motion to set aside. Given the availability of this less drastic remedy, this factor favors finding good cause to set aside the entry of default. Additionally, EnFin must serve its Rule 26(a)(1) initial disclosures within seven days of the date of this Order, and is bound to the Scheduling Order deadlines, (Dkt. 21), as modified by the court on July 10, 2026, (Dkt. 44).

Overall, the *Payne* factors weigh in favor of setting aside the entry of default against EnFin, and the court finds good cause to do so. The court also finds good cause to accept EnFin's answer and affirmative defenses, (Dkt. 28), as timely filed.[2]

### IV.    Conclusion and Order

For the foregoing reasons, the court finds good cause to vacate the entry of default and accept EnFin's answer and affirmative defenses. Accordingly, EnFin's motion to set aside entry of default is **GRANTED**. (Dkt. 26.) The clerk's entry of default, (Dkt. 23), is hereby **VACATED**, and EnFin's responsive pleading, (Dkt. 28), is accepted.

---

[2] Courts may grant extensions "for good cause" where the "party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). The relatively short delay caused by the default, the lack of prejudice, and the lack of evidence of bad faith on the part of EnFin all support accepting this responsive pleading. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) (considering factors including "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith" when determining whether a party's neglect is excusable); *Miller v. Tucker*, No. 2:13-cv-21753, 2014 WL 989204, at *4 (S.D.W. Va. Mar. 13, 2014) (applying the *Pioneer* factors to Rule 6(b)).

Plaintiff's counsel is **DIRECTED** to file a motion for attorney's fees with an affidavit setting out fees and costs in preparing filings related to the default proceedings **within 21 days** of the date of this Order.  EnFin must file any response to Sharif's motion for attorney's fees **within 7 days** of the date of service of Sharif's motion and affidavit.

Finally, EnFin is **DIRECTED** to serve its Rule 26(a)(1) initial disclosures within seven days of the date of this Order, and is bound to the Scheduling Order deadlines, (Dkt. 21), as modified by the court's order on July 10, 2026, (Dkt. 44).

**IT IS SO ORDERED.**

**ENTERED** this 12th day of August, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE

- 9 -